Filed 8/28/15  Millman v. Countrywide Bank CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| JEFFREY L. MILLMAN,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>COUNTRYWIDE BANK, N.A., et al.,<br><br>Defendants and Respondents. | B260102<br><br>(Los Angeles County<br>Super. Ct. No. LC100265) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Samantha P. Jessner, Judge.  Affirmed.

———

Stephen R. Golden & Associates, Stephen R. Golden, and Elaine D. Etingoff for Plaintiff and Appellant.

McGuireWoods, Leslie M. Werlin, and Seth Cox for Defendants and Respondents.

———

Plaintiff Jeffrey L. Millman sued defendants Countrywide Bank, N.A., Bank of America, N.A., U.S. Bank, N.A., and ReconTrust Company, N.A., for claims arising from the pending foreclosure sale of his home.[1] Millman sought to enjoin the foreclosure sale and to quiet title to the property based upon allegations that defendants—the ostensible beneficiaries and trustee of the deed of trust—have no right to foreclose. Millman also alleged that defendants failed to comply with various provisions of the California Homeowner Bill of Rights (HBOR).[2]

The trial court sustained defendants' demurrer to Millman's second amended complaint without leave to amend. After judgment was entered, Millman appealed. We affirm.

## FACTUAL AND PROCEDURAL SUMMARY

According to the allegations of the operative second amended complaint,[3] Millman is the owner of certain residential real property in Agoura Hills. In 2006 he borrowed $1,760,000 from Countrywide Bank, N.A., evidenced by a promissory note secured by a deed of trust against the property. The beneficiary under the deed of trust

---

[1]    Millman named "WMALT SERIES 2007-OA1" as a defendant. According to defendants, "Washington Mutual Mortgage Pass-Through Certificates, WMALT Series 2007-OA1" is a trust and, therefore, not a proper party. In the respondents' brief on appeal, "U.S. Bank, National Association" is identified as the trustee for "Washington Mutual Mortgage Pass-Through Certificates, WMALT Series 2007-OA1."

[2]    In 2012, the Legislature enacted Senate Bill No. 900 (2011–2012 Reg. Sess.) and Assembly Bill No. 278 (2011–2012 Reg. Sess). (Stats. 2012, ch. 86; Stats. 2012, ch. 87.) Although the Legislature did not give the legislation a title, the Governor, courts, and commentators have referred to the legislation as the "California Homeowner Bill of Rights." (See *Monterossa v. Superior Court* (2015) 237 Cal.App.4th 747, 749, fn. 1; *Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 86 & fn. 14.) The HBOR added or amended the following sections of the Civil Code: 2920.5, 2923.4-2923.7, 2924, 2924.9–2924.12, 2924.15, 2924.17–2924.20. All further statutory references are to the Civil Code.

[3]    Millman commenced this action in May 2013. After defendants demurred to the original complaint, Millman filed a first amended complaint. Defendants demurred to the first amended complaint. The court sustained the demurrer and granted Millman leave to amend. Millman filed his second amended complaint in February 2014.

2

was Mortgage Electronic Registration System (MERS). The note was allegedly "securitized and split from" the deed of trust and transferred "to and through various entities." Defendants Bank of America, N.A., and U.S. Bank, N.A., claim to be the current holders of the note.

In 2008, Millman stopped making payments on the note "until he could determine who . . . had any right, title or interest in the property." (Block capitals omitted.) At some point, defendants began nonjudicial foreclosure proceedings. In 2012, defendant ReconTrust Company, N.A., as trustee under the deed of trust, recorded a notice of default and notice of trustee sale.

Millman submitted an application for loan modification to defendants. He alleged that although he qualified for a modification, defendants failed to negotiate in good faith and denied his application.

In the first through eighth causes of action, Millman alleged that defendants failed to comply with various requirements under the HBOR. In his ninth and tenth causes of action, Millman alleged that defendants do not have standing to foreclose because they cannot produce evidence that they hold the beneficial interest in the deed of trust and are entitled to foreclose. In his eleventh cause of action, Millman asserted a claim for quiet title based on allegations that the securitization of his loan extinguished the debt and the deed of trust, and that defendants "have no right, title, lien, or interest" in the property.

Defendants demurred to the second amended complaint. The court sustained the demurrer as to each cause of action without leave to amend. This appeal followed.

**DISCUSSION**

1.     *Standard of Review*

On appeal from a judgment after the court sustains a general demurrer without leave to amend, "we determine whether the complaint states facts sufficient to constitute a cause of action." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) "'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable

3

interpretation, reading it as a whole and its parts in their context. [Citation.]" (*Ibid.*) When the demurrer "is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: If it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." (*Ibid.*)

2. *The First through Eighth Causes of Action: Alleged Violations of the Homeowner Bill of Rights*

In his first amended complaint, Millman alleged the following violations of the HBOR: (1) defendants did not provide him with a "Pre-Notice of Default" notice and failed to satisfy certain waiting period requirements (§ 2923.55; first cause of action); (2) defendants failed to provide a "single point of contact" with whom he could communicate regarding foreclosure issues (§ 2923.7; second cause of action); (3) defendants failed to advise him of foreclosure prevention alternatives (§ 2924.9; third cause of action); (4) defendants recorded a notice of default and notice of trustee sale while Millman's loan modification application was pending (§ 2923.6; fourth cause of action); (5) defendants failed to provide Millman with a timely, written acknowledgement of his loan application (§ 2924.10; fifth cause of action); (6) defendants failed to provide Millman with the reasons for the denial of his loan modification application (§ 2923.6, subd. (f); sixth cause of action); (7) defendants filed a notice of default without first satisfying certain statutory requirements, including making an "initial contact" with Millman to assess his financial situation (§ 2923.5; seventh cause of action); and (8) defendants failed to ensure that certain foreclosure documents were accurate, complete, and supported by competent and reliable evidence (§ 2924.17; eighth cause of action).

The HBOR was enacted in 2012 and became effective January 1, 2013. (See *Lueras v. BAC Home Loans Servicing, LP*, *supra*, 221 Cal.App.4th at p. 86, fn. 14.) It does not apply retroactively. (*Id.* at p. 86; § 3.)

In their demurrer to the first amended complaint, defendants argued that the HBOR did not apply to Millman's loan because the allegedly wrongful conduct occurred in 2012, before the HBOR became effective. Although Millman did not indicate when the alleged HBOR violations occurred, defendants pointed to the notice of default and notice of sale, which were recorded in 2012.[4]

The court sustained the demurrer to the HBOR causes of action. At the hearing, Millman's counsel represented that he could allege that the conduct that violated the HBOR occurred after January 1, 2013, the effective date of the HBOR. Based on that representation, the court granted Millman leave to amend those claims.

In the second amended complaint, Millman reasserted the same HBOR causes of action and repeated the factual allegations without providing the dates of the alleged violations.

In their demurrer to the second amended complaint, defendants again argued that the HBOR did not apply to Millman's claims because the alleged events occurred in 2012. Millman, in his opposition, did not respond to this point or suggest that he could allege that relevant events took place in 2013.

The court, in sustaining the demurrer, noted that Millman did not make any significant changes in the second amended complaint or offer additional factual support for his allegations. The second amended complaint, in short, did "not cure[] the problems" in the first amended complaint.

On appeal, Millman devotes a section of his opening brief to a general discussion of the HBOR and the Legislature's intent in enacting it. He does not, however, explain how the HBOR applies to the facts alleged in this case or respond in any meaningful way to the trial court's reason for sustaining the demurrer. Nor does he indicate that he could allege that pertinent events occurred after the HBOR became effective. Indeed, Millman identifies only two issues on appeal, discussed below, neither of which has any bearing on his HBOR claims. Because of the absence of argument regarding these claims,

---

[4]     Defendants requested, and the court granted, judicial notice of these documents.

Millman has forfeited any contention that the court erred in sustaining the demurrer to these claims. (See *Los Angeles Unified School Dist. v. Casasola* (2010) 187 Cal.App.4th 189, 212.)

3. *The Ninth and Tenth Causes of Action for Declaratory and Injunctive Relief.*

In his ninth cause of action, Millman alleged that defendants lack standing to foreclose because they do not hold the beneficial interest in the deed of trust. He averred that the deed of trust was improperly transferred and that "[n]one of the [d]efendants can produce accurate and complete documents supported by competent and reliable evidence . . . that establish the . . . beneficial interest" required to foreclose. In his tenth cause of action, he incorporated these allegations and added that, because defendants "do not own a beneficial interest under the [d]eed of [t]rust, they do not have the right to record or cause to be recorded the purported [n]otice of [d]efault and have no right to institute foreclosure proceedings." Millman sought a declaration that none of defendants is the beneficiary under the deed of trust, and an injunction to stop the foreclosure sale.

The court properly sustained the demurrer to these causes of action. California courts have consistently rejected similar claims and "refused to delay the nonjudicial foreclosure process by allowing trustor-debtors to pursue preemptive judicial actions to challenge the right, power, and authority of a foreclosing 'beneficiary' or beneficiary's 'agent' to initiate and pursue foreclosure." (*Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 511; see also *Kan v. Guild Mortgage Co.* (2014) 230 Cal.App.4th 736, 741; *Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481, 1493; *Siliga v. Mortgage Electronic Registration Systems, Inc.* (2013) 219 Cal.App.4th 75, 82 (*Siliga*); *Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1154 (*Gomes*).)

In *Gomes*, *supra*, an agent for MERS began foreclosure proceedings by recording a notice of default. The debtor, Gomes, believed that the original holder of the note had sold the note and that the foreclosing entity was neither the owner of the note nor the owner's agent. Before the foreclosure sale, Gomes sued for damages and declaratory

6

relief to "'test whether the person electing to sell the property is, or is duly authorized to do so by, the owner of a beneficial interest in it.'" (*Gomes*, *supra*, 192 Cal.App.4th at p. 1152.)  The trial court sustained the defendants' demurrer and the Court of Appeal affirmed.  The court explained:  "California's nonjudicial foreclosure scheme is set forth in Civil Code sections 2924 through 2924k, which 'provide a comprehensive framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust.' [Citation.] 'These provisions cover every aspect of exercise of the power of sale contained in a deed of trust.' [Citation.] 'The purposes of this comprehensive scheme are threefold:  (1) to provide the creditor/beneficiary with a quick, inexpensive and efficient remedy against a defaulting debtor/trustor; (2) to protect the debtor/trustor from wrongful loss of the property; and (3) to ensure that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser.' [Citation.] 'Because of the exhaustive nature of this scheme, California appellate courts have refused to read any additional requirements into the non-judicial foreclosure statute.' [Citations.] [¶] By asserting a right to bring a court action to determine whether the owner of the [n]ote has authorized its nominee to initiate the foreclosure process, Gomes is attempting to interject the courts into this comprehensive nonjudicial scheme. . . .  Nothing in the statutory provisions establishing the nonjudicial foreclosure process suggests that such a judicial proceeding is permitted or contemplated." (*Id.* at p. 1154.)

Like the plaintiff in *Gomes*, Millman is attempting to have the court determine that the entities pursuing a nonjudicial foreclosure sale were not authorized to do so, and to enjoin that process until that determination is made.  Allowing such a claim "would fundamentally undermine the nonjudicial nature of the process and introduce the possibility of lawsuits filed solely for the purpose of delaying valid foreclosures."

(*Gomes*, *supra*, 192 Cal.App.4th at p. 1155.)  Accordingly, the court did not err in sustaining the demurrer to the ninth and tenth causes of action.[5]

Even if there is a defect in the "chain of ownership" of the note or deed of trust, as Millman alleged, recent decisions have made clear that a plaintiff asserting wrongful foreclosure on this theory must establish prejudice.  (See, e.g., *Siliga*, *supra*, 219 Cal.App.4th at p. 85; *Herrera v. Federal National Mortgage Assn.* (2012) 205 Cal.App.4th 1495, 1507; *Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 272.)  In *Siliga,* the plaintiffs commenced a preforeclosure action challenging the authority of the defendants to nonjudicially foreclose based on an alleged invalid assignment of the deed of trust.  The trial court sustained the defendants' demurrer and the Court of Appeal affirmed based in part on the application of *Gomes* and *Jenkins*.  (*Siliga, supra,* 219 Cal.App.4th at pp. 82-83.)  The court went on to point out that the plaintiffs "fail to allege any facts showing that they suffered prejudice as a result of any lack of authority of the parties participating in the foreclosure process.  The [plaintiffs] do not dispute that they are in default under the note.  The assignment of the deed of trust and the note did not change the [plaintiffs'] obligations under the note, and there is no reason to believe that . . . the original lender would have refrained from foreclosure in these circumstances.  Absent any prejudice, the [plaintiffs] have no standing to complain about any alleged lack of authority or defective assignment." (*Id.* at p. 85.)  This analysis applies equally to Millman's ninth and tenth causes of action.

Millman relies heavily on *Cockerell v. Title Ins. & Trust Co.* (1954) 42 Cal.2d 284, for the proposition that the assignee of a note has the burden of

---

[5]     As Millman points out, the Supreme Court is currently considering the question whether, in an action for wrongful foreclosure, the borrower has standing to challenge an assignment of the note and deed of trust on the basis of defects allegedly rendering the assignment void.  (*Yvanova v. New Century Mortgage Corp.* (2014) 226 Cal.App.4th 495 [172 Cal.Rptr.3d 104], review granted Aug. 27, 2014, S218973.)  Unlike this case, as well as *Gomes* and its progeny, *Yvanova* involves  wrongful foreclosure claims asserted *after* a foreclosure sale.

Millman requests that we take judicial notice of an amicus brief in *Yvanova* filed by the Attorney General.  We decline to do so.

proving a valid assignment. In *Cockerell*, the parties claimed conflicting rights to excess proceeds from the foreclosure sale under a second deed of trust. Plaintiff asserted she was entitled to the proceeds because she was the assignee of a note secured by a third deed of trust on the property. The defendants asserted they were entitled to the proceeds because they were the owners of the property sold. The trial court found that the plaintiff had failed to prove the validity of the claimed assignment, and ruled in favor of the defendants. The Supreme Court affirmed, stating that "[t]he burden of proving an assignment falls upon the party asserting rights thereunder. [Citations.] In an action by an assignee to enforce an assigned right, the evidence must not only be sufficient to establish the fact of assignment when that fact is in issue [citation] but the measure of sufficiency requires that the evidence of assignment be clear and positive to protect an obligor from any further claim by the primary obligee." (*Id.* at p. 292.)

Although the source of the disputed funds in *Cockerell* was a nonjudicial foreclosure sale, the foreclosure sale was irrelevant to the legal issues surrounding the claims to the proceeds and the validity of the assignment. What matters for our purposes is that the dispute was raised "[i]n an action by an assignee to enforce an assigned right . . . ." (*Cockerell v. Title Ins. & Trust Co.*, *supra*, 42 Cal.2d at p. 292.) It is, therefore, inapposite.

4. *The Eleventh Cause of Action for Quiet Title*

In his eleventh cause of action for quiet title, Millman alleged that title to the property is vested solely in him and that defendants have no right, title, lien, or interest in the property. He asserted that the note was paid in full when the original lender sold it in connection with the securitization of the loan. The theory appears to be that the lender's receipt of payment in exchange for its assignment of the note to the investment trust constituted payment of the debt, which extinguished the note and the deed of trust. Millman provided no argument or authority to support this theory in the trial court or on appeal. It is therefore waived. (See *Trinkle v. California State Lottery* (2003) 105 Cal.App.4th 1401, 1413.)

9

Instead, he argues that the quiet title claim is based upon the same theory supporting the ninth and tenth causes of action.  It therefore suffers a similar fate.  Like the ninth and tenth causes of action, the quiet title cause of action is an impermissible preforeclosure attempt to prevent a nonjudicial foreclosure sale.  (See *Kan v. Guild Mortgage Co.*, *supra*, 230 Cal.App.4th at pp. 741-742 [applying *Gomes* and *Jenkins* to preforeclosure action for quiet title].)

Millman's quiet title cause of action has an additional problem:  He did not allege that he tendered payment of the debt.  Indeed, he averred that he had not made a payment on the loan since 2008.  The omission is fatal.  "A borrower may not . . . quiet title against a secured lender without first paying the outstanding debt on which the . . . deed of trust is based.  [Citations.]  The cloud on title remains until the debt is paid." (*Lueras v. BAC Homes Loans Servicing, LP*, *supra*, 221 Cal.App.4th at p. 86.)

## DISPOSITION

The judgment is affirmed.  Defendants shall recover their costs on appeal.

NOT TO BE PUBLISHED.


                                                    ROTHSCHILD, P. J.
We concur:


            CHANEY, J.


            LUI, J.

10