Filed 10/9/15  Henderson v. Bank of New York Mellon CA2/4
# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| JANENE HENDERSON, | B255851 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. TC027464) |
| v. | |
| BANK OF NEW YORK MELLON et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, William Barry, Judge.  Affirmed.

Stephen R. Golden & Associates, Stephen R. Golden and Elaine D. Etingoff for Plaintiff and Appellant.

Houser & Allison, Robert W. Norman, Jr. and Eileen M. Horschel for Defendants and Respondents.

_____

Janene Henderson appeals from a judgment of dismissal after the trial court sustained a demurrer to her complaint. She argues that she has standing to preemptively challenge the foreclosure of her home on the ground that the allegedly untimely assignment of her loan to a securitized trust was void, and she need not show harm or prejudice to herself in order to do so. We disagree and affirm.

## FACTUAL AND PROCEDURAL SUMMARY

Appellant bought her home in 1999 and refinanced it in 2007 through an adjustable rate loan. In 2012, an assignment of the loan to respondent Bank of New York Mellon (BNYM), as trustee for the Certificate Holders of CWABS Inc., Asset Backed Certificates, Series 2007-SEA1 (CWABS Trust) and substitution of ReconTrust Company, N.A. (ReconTrust)[1] as trustee under the deed of trust were recorded, followed by a notice of default and notice of trustee's sale. In 2013, appellant applied for a loan modification to the new loan servicer, respondent Bayview Loan Servicing, LLC (Bayview). She did not accept the terms Bayview offered her because the modified monthly payments exceeded her means.

After Bayview notified appellant that she no longer qualified for a loan modification, appellant sued BNYM, ReconTrust, and Bayview. Respondents demurred, and appellant filed a first amended complaint, listing twelve causes of action: 1) lack of standing; 2) negligent misrepresentation; 3) violation of Civil Code section 2923.5; 4) breach of contract; 5) unjust enrichment; 6) quiet title; 7) negligence; 8) declaratory relief; 9) predatory lending and violation of the Unfair Competition Law (UCL) (Bus. & Prof. Code, § 17200); 10) violation of the Homeowner Bill of Rights (HBOR) (Civ. Code, §§ 2923.5, 2924, 2924.17); 11) violation of the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C.A. § 2601 et seq.); and 12) wrongful initiation of foreclosure. The trial court overruled the demurrer as to the ninth cause of action and sustained it with

---

[1] Although ReconTrust was a named defendant, it did not participate in the proceedings below and has not appeared in this appeal.

leave to amend as to the eleventh. As to all other causes of action, the demurrer was sustained without leave to amend.

Appellant's second amended complaint alleged her loan had been securitized into "CWL 2007-SEA1" in June 2007, as evidenced by a property securitization analysis report appellant attached as an exhibit. She alleged that the recorded 2012 assignment was invalid because it did not appear in an attached "Countrywide Letter to the Securities and Exchange Commission," which listed transactions between June and December 2007 for "CWL 07/SEA1." Appellant claimed "it is well settled that the closing dates of trusts are generally 3 months and no longer than one year." Alternatively, she claimed the CWABS Trust did not exist because the full name of the trust, as stated in the 2012 assignment, did not appear in a list of CWABS 2007 trusts attached to her complaint.

The second amended complaint asserted a cause of action for violation of RESPA, based on Bayview's alleged failure to respond to a request for mortgage assistance, which appellant's counsel submitted on her behalf in October 2013, after filing this lawsuit. It also asserted a cause of action for predatory lending based on the terms of the loan, and a violation of the UCL based on the allegedly improper securitization of the loan.

The court sustained respondents' demurrer to the second amended complaint without leave to amend, and dismissed the case. As to the cause of action under RESPA, the court ruled appellant could not show that a RESPA request had been made on her behalf. The court concluded that the predatory lending claim was time barred and did not lie against respondents. The court also ruled appellant could not challenge the securitization of her loan, and could not state a cause of action for violation of the UCL based on the alleged discrepancies between the name of the trust listed in the recorded assignment and the report attached to her complaint.

This appeal followed.

## DISCUSSION

When a demurrer is sustained without leave to amend, we determine de novo whether the complaint states facts sufficient to constitute a cause of action, and whether

3

the court abused its discretion in denying leave to amend. (*Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1100.) We treat the demurrer as admitting all material facts properly pleaded, but not conclusions of law. (*Aubry v. Tri–City Hospital Dist.* (1992) 2 Cal.4th 962, 967.)

Appellant raises two issues on appeal: whether she has standing to challenge the assignment of her loan as allegedly void, and whether she must demonstrate harm or prejudice in order to do so.

I

Appellant acknowledges that the first issue is currently before the California Supreme Court. That court has granted review in several cases that disagreed with *Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079 (*Glaski*), which, at present, is the only published California case to hold that a borrower may challenge the allegedly late transfer of a loan to a securitization trust as void. (See *Yvanova v. New Century Mortgage Corp.* (2014) 226 Cal.App.4th 495, review granted Aug. 27, 2014, S218973; *Keshtgar v. U.S. Bank, N.A.* (2014) 226 Cal.App.4th 1201, review granted Oct. 1, 2014, S220012; *Mendoza v. JPMorgan Chase Bank, N.A.* (2014) 228 Cal.App.4th 1020, review granted Nov. 12, 2014, S220675; *Boyce v. T.D. Service Co.* (2015) 235 Cal.App.4th 429, review granted July 15, 2015, S226267.)

*A. Standing under the HBOR*

Appellant's opening brief is not a model of clarity, but she mainly challenges the consensus in California that "a preforeclosure, preemptive action is not authorized by the nonjudicial foreclosure statutes because it creates an additional requirement that a foreclosing entity first demonstrate in court that it is entitled to foreclose." (*Kan v. Guild Mortgage Company* (2014) 230 Cal.App.4th 736, 743, citing *Jenkins v. JP Morgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 512–513; see also *Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1155.) Appellant argues that the HBOR (Civ. Code, §§ 2920.5; 2923.4–2923.7; 2924; 2924.9–2924.12; 2924.15; 2924.17– 2924.20), which amended the nonjudicial foreclosure law effective January 1, 2013, now requires that a beneficiary of a deed of trust prove its interest when challenged.

Specifically, appellant relies on the HBOR provisions that "[n]o entity shall record or cause a notice of default to be recorded or otherwise initiate the foreclosure process unless it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust, or the designated agent of the holder of the beneficial interest" (Civ. Code, § 2924, subd. (a)(6)), and that any recorded notice of default, assignment of a deed of trust, or substitution of trustee "shall be accurate and complete and supported by competent and reliable evidence." (*Id*., § 2924.17, subd. (a).) She points out that a borrower is allowed to seek injunctive relief for any material violation of section 2924.17, and a trustee's sale may be enjoined until the court determines that the violation has been remedied. (*Id*., § 2924.19, subd. (a).)

We do not agree that the HBOR provisions on which appellant relies create broad standing to challenge a beneficiary's interest in an assigned loan on just any ground. By itself, Civil Code section 2924, subdivision (a)(6) does not authorize a borrower to seek injunctive relief, nor does section 2924.19 authorize seeking such relief for a violation of section 2924. Section 2924.17 prohibits "'robo-signing,' which 'occurs when persons sign a document without personal knowledge of the content attested to therein and/or sign the documents without the requisite authority to do so.' [Citation.]" (*Trepany v. Deutsche Bank National Trust Co.* (C.D.Cal., July 23, 2015, No. CV 15–00965–AB), 2015 WL 4506901, at *5.)[2] The legislative history of the HBOR, portions of which appellant cites out of context, supports this interpretation. (See Sen. Rules Com., Off. of Sen. Floor Analyses, Conf. Rep. No. 1 on Sen. Bill No. 900 (2011-2012 Reg. Sess.) as amended June 27, 2012, pp. 25–29 [validity of foreclosure documents requirement arose from concern over "robosigning"].)

Appellant cites *Cockerell v. Title Ins. & Trust Co.* (1954) 42 Cal.2d 284, 292 for the general proposition that "[i]n an action by an assignee to enforce an assigned right, the evidence must not only be sufficient to establish the fact of assignment when that fact

---

[2] Unpublished federal cases may be cited as persuasive authority. (*Aleman v. AirTouch Cellular* (2012) 209 Cal.App.4th 556, 576, fn. 8.)

5

is in issue [citation] but the measure of sufficiency requires that the evidence of assignment be clear and positive to protect an obligor from any further claim by the primary obligee. [Citation.]" The issue in that case was similar to the problem identified in cases of robo-signing—that there was lack of evidence the person executing the assignment had authority to do so. (*Id*. at p. 293.)

Appellant has not alleged that any of the recorded documents on which respondents rely has been robo-signed by a person unauthorized to sign it or lacking personal knowledge of the information included in it. In her brief, appellant suggests that Mortgage Electronic Registration Systems, Inc. (MERS) improperly initiated the foreclosure against her along with respondents, even though it "possessed no rights to be paid." There is no allegation that MERS was involved in the foreclosure process at all, and its authority to assign the loan as a nominee for the lender and beneficiary under the deed of trust is well settled. (*Siliga v. Mortgage Electronic Registration Systems, Inc.* (2013) 219 Cal.App.4th 75, 83–84.)

Nothing in the HBOR or *Cockerell v. Title Ins. & Trust Co.*, *supra*, 42 Cal.2d 284 gives a borrower standing to challenge the allegedly late assignment of a loan to a securitized trust, which is the only challenge raised on appeal. Nevertheless, appellant contends she is "not barred from challenging the effectiveness of the assignments as evidence that [respondents] did not have authority to foreclose," citing a case from the Western District of Missouri. (*Ball v. Bank of N.Y.* (W.D. Mo. Dec. 20, 2012, No. 4:12-CV-144-NKL, 2012 WL 6645695, at *4.) The court in that case reasoned that in pointing to defects in the securitization process, the borrowers do not "seek to enforce the [securitization] contracts or affect the relationship between the parties to the contracts. Rather, [they] point to defects in the securitization process as evidence that neither title nor possession of the note passed to the trustee who sought to foreclose their mortgages. Thus, [they] seek only to use the breaches as evidence that the party seeking to foreclose is not the owner of their note." (*Ibid*.) Appellant fails to acknowledge that the case represents the minority view on the subject. The consensus among federal courts is that borrowers lack standing to challenge the validity of the securitization of their loans,

6

particularly based on noncompliance with the terms of the PSA's that set up the securitization trusts to which the loans are assigned. (See *Schwend v. U.S. Bank, N.A.* (E.D. Mo. Feb. 26, 2013, No. 4:10-CV-1590, 2013 WL 686592, at \*3, fn. 3.)

### B. *Standing to Challenge Securitization Defects*

Appellant contends that respondents have no right to foreclose because her loan was transferred after the closing date of "CWL 2007-SEA 1."[3]  In essence, she alleges an irregularity in the securitization of her loan. Securitization occurs when "a mortgage lender sells pools of mortgages into trusts created to receive the stream of interest and principal payments from the mortgage borrowers. The right to receive trust income is parceled into certificates and sold to investors, called certificateholders. The trustee hires a mortgage servicer to administer the mortgages by enforcing the mortgage terms and administering the payments. The terms of the securitization trusts as well as the rights, duties, and obligations of the trustee, seller, and servicer are set forth in a Pooling and Servicing Agreement ('PSA')." (*BlackRock Financial Management Inc. v. Segregated Account of Ambac Assur. Corp.* (2d Cir. 2012) 673 F.3d 169, 173.)  If it complies with certain requirements of the Internal Revenue Code, the securitization trust qualifies as a tax-exempt real estate mortgage investment conduit (REMIC). (26 U.S.C. §§ 860A-G.)

### 1. *Standing under Glaski*

The operative complaint alleges that the assignment of appellant's loan to the securitized trust is void because "it did not conform with the requirements under New York law for [it] to be a tax exempt trust and it did not comply with Internal Revenue's law for creation and maintenance of a trust under New York law." To the extent these allegations are based on the holding of *Glaski*, *supra*, 218 Cal.App.4th 1079, which appellant urges us to follow, we need not accept them. (*Aubry v. Tri-City Hospital Dist.*, *supra*, 2 Cal.4th at p. 967 [on demurrer, we do not accept conclusions of law as true].)

---

[3] Appellant appears to have abandoned her assumptions that "CWL 2007-SEA1" is not the CWABS Trust and that the CWABS Trust does not exist.

*Glaski*, *supra*, 218 Cal.App.4th 1079 held that a borrower has standing to challenge the assignment of a loan to a securitized trust after the trust's closing date. (*Id.* at pp. 1094–1096.) Because the borrower in that case alleged that the trust was formed under New York law, *Glaski* followed a New York decision, *Wells Fargo Bank, N.A. v. Erobobo* (2013) 39 Misc.3d 1220(A) (*Erobobo I*), which stated: "'Under New York Trust Law, every sale, conveyance or other act of the trustee in contravention of the trust is void. EPTL § 7-2.4. Therefore, the acceptance of the note and mortgage by the trustee after the date the trust closed, would be void. [Citations.]'" (*Glaski*, at p. 1097.) *Erobobo I* has since been reversed. (*Wells Fargo Bank, N.A. v. Erobobo* (2015) 127 A.D.3d 1176 (*Erobobo II*).) In reversing *Erobobo I*, the Appellate Division of the Supreme Court of New York held that a borrower whose loan was assigned to a securitized trust has no standing to challenge the assignee's status "based on purported noncompliance with certain provisions of the PSA." (*Erobobo II*, at p. 1178, citing *Rajamin v. Deutsche Bank Nat'l. Trust Co.* (2d Cir. 2014) 757 F.3d 79, 90 (*Rajamin*) [holding that, under weight of New York authority, assignments in contravention of PSA are voidable at trust beneficiary's election, not void *ab initio*].)[4]

*Glaski*, *supra*, 218 Cal.App.4th 1079 also reasoned that treating the attempted assignment as void rather than voidable "is justified because it protects the [trust] beneficiaries . . . from the potential adverse tax consequence of the trust losing its status as a REMIC trust under the Internal Revenue Code." (*Id.* at p. 1097.) But the interests of the trust beneficiaries are adverse to those of the borrower. (*Rajamin*, *supra*, 757 F.3d at p. 90; see also *Bank of America Nat. Assn. v. Bassman FBT, L.L.C.* (Ill. App. 2012) 981 N.E.2d 1, 13 ["New York legislature could [not] have intended to allow a debtor in a commercial transaction to invoke the provisions of a trust to which it is a stranger in order to frustrate the collection of the debt"].)

---

[4] *Rajamin*, *supra*, 757 F.3d 79, also questioned the assumption that the date on the recorded assignment determines when the assignment was made, reasoning that a PSA by its terms was sufficient to effectuate an assignment. (*Id.* at p. 91.)

8

### 2. *Appellant's Alternative Argument*

Appellant cannot avoid application of the majority rule—that borrowers lack standing to enforce the terms of PSA's—by relying not on the applicable PSA, but on a schedule attached to a "Countrywide Letter to the Securities and Exchange Commission." The schedule lists transactions between June and December 2007 for "CWL 07/SEA1," but the list allegedly does not include the assignment of appellant's loan. Appellant essentially asserts that the assignment is void because it was not disclosed to the Securities and Exchange Commission and took place outside the dates listed in the disclosure. That is yet another conclusion of law that on demurrer we need not accept as true. (*Aubry v. Tri-City Hospital Dist.*, *supra*, 2 Cal.4th at p. 967.) Even assuming her loan is not listed among the "sales transactions" for "CWL 07/SEA1," appellant cites no authority that the validity of an assignment to a securitized trust is governed by schedules submitted to the Securities and Exchange Commission, or that a nondisclosure of a sales transaction to that administrative agency renders the transaction void *ab initio* and subject to challenge by a borrower who is neither a party to the transaction, nor a beneficiary. (*Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979 [unsupported contentions are forfeited on appeal].)

Appellant lacks standing to challenge the securitization of her loan as defective, and the alleged defects do not render the assignment of the loan to the CWABS Trust void.

## II

Appellant's argument that she is not required to show harm or prejudice to herself from the allegedly irregular securitization of her loan is contrary to the weight of California authority. (See *Jenkins v. JP Morgan Chase Bank, N.A.*, *supra*, 216 Cal.App.4th at pp. 514–515 [preemptive action for declaratory relief requires actual controversy and may not be based on "theoretical claims of hypothetical transferors and transferees"]; *Siliga v. Mortgage Electronic Registration Systems, Inc.*, *supra*, 219 Cal.App.4th at p. 85 [absent prejudice, borrower has no standing to challenge defective assignment]; see also *Herrera v. Federal National Mortgage Assn.* (2012) 205

9

Cal.App.4th 1495, 1507; *Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 272.)

Appellant cites no authority for the proposition that the HBOR has dispensed with that requirement. The legislative history of the HBOR, on which appellant relies, shows the Legislature was intent on protecting "against any potential frivolous claims or efforts to merely delay legitimate foreclosure proceedings"; to that end, "no legal action whatsoever could be brought unless the violation is material." (Sen. Rules Com., Off. of Sen. Floor Analyses, Conf. Rep. No. 1 on Sen. Bill No. 900 (2011-2012 Reg. Sess.) as amended June 27, 2012, pp. 32–33.) To the extent Civil Code sections 2924.12 and 2924.19 authorize a borrower to seek a temporary injunction for a "material" violation of certain HBOR provisions, such an injunction may be issued only after weighing "two interrelated factors: the likelihood the moving party ultimately will prevail on the merits, and the relative interim harm to the parties from the issuance or nonissuance of the injunction." (*Monterossa v. Superior Court* (2015) 237 Cal.App.4th 747, 754, citing *Hunt v. Superior Court* (1999) 21 Cal.4th 984, 999.)

Alternatively, appellant argues that a borrower whose loan was invalidly securitized may be subject to inconsistent judgments and double payments and may lack a meaningful opportunity "to achieve some type of workout and avoid foreclosure." Without evidence of conflicting claims, the risk of double exposure is purely hypothetical. (*Rajamin*, *supra*, 757 F.3d at pp. 85–86.) Although she offers to amend the complaint, appellant does not claim she can truthfully allege that the assignment of her loan has exposed her personally to double payments and inconsistent judgments. She has not cited, and we are not aware of, any case where the original lender or assignor sought to invalidate an assignment to a securitization trust in order to pursue a claim against a borrower. Nor has the assignment prevented appellant from applying for a loan modification, as she alleges that she received and rejected Bayview's modification offer. Appellant cannot show that any alleged securitization defect caused her harm or prejudice.

The court correctly sustained respondents' demurrer without leave to amend.

10

## DISPOSITION

The judgment of dismissal is affirmed.  Respondents are entitled to their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EPSTEIN, P. J.

We concur:


WILLHITE, J.


MANELLA, J.